COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Moon, Judge Fitzpatrick and
          Senior Judge Duff
Argued at Alexandria, Virginia


ARCHIE BARFIELD

v.   Record No.  2351-93-4                    OPINION BY
                                      CHIEF JUDGE NORMAN K. MOON
COMMONWEALTH OF VIRGINIA                       JUNE 6, 1995

              FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
                     Herman A. Whisenant, Jr., Judge

          Glenwood P. Roane (Thorsey & Roane, P.C., on
          briefs), for appellant.

          Robert H. Anderson, III, Assistant Attorney
          General (James S. Gilmore, III, Attorney
          General, on brief), for appellee.


     Archie Barfield appeals his bench trial convictions of rape
and forcible sodomy.  He argues that the trial judge erred by
proceeding in his absence when, after the court had recessed at
the end of the first day of trial, he failed to appear for the
second and concluding day of trial.  Because we find Barfield's
absence from the second day of trial to be a knowing and
voluntary waiver of his right to be present as guaranteed by the
Sixth Amendment and Code § 19.2-259, we hold the trial court did
not err in proceeding in his absence; accordingly, we affirm.

     At the conclusion of the first day of trial on June 16,
1993, both the Commonwealth and Barfield had rested and, with the
exception of one evidentiary matter and reconsideration of a
motion made the previous day regarding a prior indictment, the
court was ready to proceed with closing arguments.  The trial

judge instructed the Commonwealth and Barfield about the next day's proceedings and stated that the case would be in recess until the following morning at 10:00 a.m.

The following day, Barfield did not return to court. Barfield's counsel stated that he had instructed Barfield, who was free on bond, to be in court by 9:30 a.m., but that he had no explanation for Barfield's failure to appear.

The court waited two hours for Barfield to appear. During this time, both the Commonwealth and Barfield's counsel attempted to locate Barfield. The Commonwealth indicated that it had sent a patrol car to Barfield's house to locate him and that it had received no reports of traffic accidents to explain his absence. Barfield's counsel stated that attempts to locate or reach him by his beeper or at his girlfriend's house had failed.

The court found that Barfield had "voluntarily absented himself from the trial" and determined to conclude the trial without him. After hearing closing arguments, the court found Barfield guilty on both charges and issued a capias for his arrest. While Barfield later voluntarily returned to the jurisdiction, he concedes that he also voluntarily left the jurisdiction. Upon his return, Barfield was sentenced in accordance with his convictions.

This is a case of first impression in Virginia because it deals not with a defendant who fails to appear after his arraignment at his trial's commencement, but with a defendant who flees after his trial is underway. Consistent with the

principles of <u>Diaz v. United States</u>, 223 U.S. 442 (1912), and its progeny, we hold that Barfield's midtrial flight constituted a knowing and voluntary waiver of his right to be present at his trial.

"A defendant's right to be present at trial arises from two sources, the sixth amendment and Code § 19.2-259." <u>Head v. Commonwealth</u>, 3 Va. App. 163, 168, 348 S.E.2d 423, 427 (1986). In <u>Head</u>, we noted that while there is a presumption against waiver of a defendant's right to be present at trial, "[a] defendant's voluntary absence from trial may be properly construed under the sixth amendment as a waiver of his right of confrontation." <u>Id.</u> (citing <u>Taylor v. United States</u>, 414 U.S. 17 (1973)).

In <u>Crosby v. United States</u>, 506 U.S. ___, 113 S. Ct. 748 (1993), the Supreme Court of the United States recognized the distinction between pretrial and midtrial flight of a criminal defendant and its impact on the state's interest in proceeding with the prosecution of a defendant in his absence. The Court noted that <u>Diaz</u>, cited by the Advisory Committee that drafted Rule 43 of the Federal Rules of Criminal Procedure, "treats midtrial flight as a <u>knowing and voluntary waiver</u> of the right to be present."[1] <u>Crosby</u>, 506 U.S. at ___, 113 S. Ct. at 752

---

[1] Rule 43 provides in relevant part:
(a) Presence Required. The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.
(b) Continued Presence not Required. The further

(emphasis added).  While expressing no opinion as to whether the right could be waived in other circumstances, the Court held that a "defendant's initial presence serves to assure that any waiver is indeed knowing."  Id. at ___, 113 S. Ct. at 752.

> Moreover, a rule that allows an ongoing trial to continue when a defendant disappears deprives the defendant of the option of gambling on an acquittal knowing that he can terminate the trial if it seems that the verdict will go against him -- an option that might otherwise appear preferable to the costly, perhaps unnecessary, path of becoming a fugitive from the outset.

Id. at ___, 113 S. Ct. at 753.

In Taylor, a case similar to Barfield's case, the Court held that a defendant who failed to appear after the first day of his trial "had no right to interrupt the trial by his voluntary absence . . . by urging only that he should have been warned that no such right existed and that the trial would proceed in his absence."  414 U.S. at 20.  Consistent with Diaz, the Court concluded that the defendant's right to be present was waived by his voluntary absence:

> It is wholly incredible to suggest that petitioner, who was at liberty on bail, had attended the opening session of his trial, and had a duty to be present at the trial, . . . entertained any doubts about his right to be present at every stage of his trial. It seems equally incredible to us . . .  "that a defendant who flees from a courtroom in the midst of a trial . . . would not know that as a consequence the trial could continue in his absence." . . . "[T]here

progress of the trial to and including the return of the verdict shall not be prevented and the defendant shall be considered to have waived the right to be present whenever a defendant, initially present,

(1) is voluntarily absent after the trial has commenced.

- 4 -

> can be no doubt whatever that the government prerogative to proceed with a trial may not be defeated by conduct of the accused that prevents the trial from going forward." Illinois v. Allen, 397 U.S. 337, 349, 90 S.Ct. 1057, 1063, 25 L. Ed.2d 353 (1970).

Id.

This Court has held that a defendant should not be allowed to profit from wrongful delays, noting that a "fair, efficient system of justice requires the orderly conduct of cases free from spectacle and disruption." Martin v. Commonwealth, 11 Va. App. 397, 405, 399 S.E.2d 623, 627 (1990); also see Quintana v. Commonwealth, 224 Va. 127, 295 S.E.2d 643 (1982), cert. denied, 460 U.S. 1029 (1983).

> It is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country. The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated.

Martin, 11 Va. App. at 405, 399 S.E.2d at 627 (citing Illinois v. Allen, 397 U.S. 337, 343 (1970)). Although Martin and Quintana dealt with a defendant's possible forfeiture of his right to be present at trial due to his disruptive courtroom behavior, the impact on the fair and efficient administration of justice is the same when a defendant absconds after the trial has commenced.

Based on this same rationale, the Supreme Court in Diaz stated that it would be inconsonant "with the dictates of common sense that an accused person, being at large upon bail, should be at liberty, whenever he pleased, to withdraw himself from the court . . . and break up a trial already commenced." 223 U.S. at

457.

> The question is one of broad public policy, whether an accused person, placed upon trial for a crime, and protected by all the safeguards with which the humanity of our present criminal law sedulously surrounds him, can with impunity defy the processes of that law, paralyze the proceedings of courts and juries, and turn them into a solemn farce, and ultimately compel society, for its own safety, to restrict the operation of the principle of personal liberty. Neither in criminal cases nor in civil cases will the law allow a person to take advantage of his own wrong. And yet this would be precisely what it would do if it permitted . . . an absconding from the jurisdiction while at large on bail, during the pendency of a trial before a jury, to operate as a shield.

Id. at 448.

In this case, Barfield was present for every stage of the proceedings until June 17, 1993, the second day of trial. All that remained to be completed on June 17, 1993, was the defense counsel's stipulation to the accuracy of a transcript of a taped interview of Barfield and closing arguments. Barfield had been released on bond during the pendency of the trial and had executed release and recognizance documentation advising him that he could be tried in his absence if he failed to appear. Moreover, while Barfield was present on June 16, 1993, the court made it clear that the trial was in recess only until 10:00 a.m. on June 17, 1993, and Barfield was instructed by his attorney to be present for the second day. Therefore, we hold that under these circumstances, Barfield's midtrial flight was a knowing and voluntary waiver of the right to be present.

However, Barfield contends that in addition to a finding

that a defendant has voluntarily and knowingly waived his right to be present, a trial court must also find that a continuance would prejudice the Commonwealth's case in order to proceed in a defendant's absence after a trial has begun. While in Head, we held that prejudice to the Commonwealth's case due to a continuance must be shown in order for the court to proceed in the defendant's absence, our holding addressed only those cases where the trial had not yet commenced. When the defendant absconds after the trial has begun, the prejudice to the Commonwealth is clear and substantial. Both jurors and witnesses will have their lives further disrupted by having to be on call until the capture or return of the defendant. Witnesses's memories will fade. Prosecutors, defense counsel and judges, who need to work on other cases, will later have to interrupt their present case load to familiarize themselves with the defendant's case which was put on hold. The general disruption to the proper administration of the criminal justice system is such that the Commonwealth should not have to prove any special prejudice when the defendant absconds after the trial has commenced.

We hold that when the trial court determines that a defendant has voluntarily and knowingly absconded from the jurisdiction after his trial has commenced, public policy dictates that a trial court, exercising its sound discretion, may proceed with the trial in the defendant's absence. Our holding is consistent with the holding in Diaz, which has been repeatedly followed by the Supreme Court of the United States in subsequent

cases, most notably <u>Taylor</u>, which this Court and the Supreme Court of Virginia have cited with approval.  <u>See</u> <u>Head</u>, 3 Va. App. at 168, 348 S.E.2d at 427 (1986); <u>Bilokur v. Commonwealth</u>, 221 Va. 467, 472, 270 S.E.2d 747, 751 (1980).

In this case, Barfield concedes that he voluntarily left the jurisdiction after the trial began.  The trial court made extensive inquiries to determine whether Barfield had voluntarily absented himself from the trial.  The trial court noted that it had other cases on the docket for June 17, 1993, and it waited nearly two hours for Barfield to appear.  The court also recognized that the proceedings had already been continued one day to allow Barfield's counsel to review Barfield's taped interview and the transcript thereof to determine the accuracy of one of the Commonwealth's exhibits.  Under these circumstances, the trial judge did not abuse his discretion in proceeding to the conclusion of the case in Barfield's absence.

<u>Affirmed.</u>